UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARLA SEE, ) | CASE NO. 1:15-cv-01894-DAP |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| CLEVELAND CLINIC FOUNDATION and ) | |
| CHERYL WRIGHT ) | |
| ) | |
| Defendants. ) | |

**I. Background**

Carla See ("See") is an African American and, at times relevant, over forty years old. Aff. of See ¶ 3, Doc #: 1-1; Compl. ¶ 10, Doc #: 1-1; Dep. (pt. I) of See 28, Doc #: 20-1. See was hired as a Supervisor II with Defendant Cleveland Clinic Foundation's ("CCF") Taussig Cancer Institute in February 2014. Aff. of See ¶ 2.

See's supervisor position oversaw half of the schedulers and half of the secretaries: about 22 people. Aff. of See ¶ 19. A separate supervisor position oversaw the patient care assistants and the other half of the schedulers and secretaries: about 23 to 28 people. Dep. of Williams 20, Doc ##: 20-3 and 22-2. Both of these supervisor positions reported to Defendant Cheryl Wright

("Wight"). Aff. of See ¶ 18. Latoya Williams, also African American, held this other supervisor position until summer of 2014. Dep. of Williams at 22–23, 143. Crystal Cernanec, who is Caucasian and under forty years old, occupied this other supervisory position from January 2015 until July 2016. Decl. of Cernanec ¶¶ 2, 3, 8, Doc #: 20-6. However, in between the times when Williams and Cernanec occupied this second supervisor position, that position was unfilled and See was responsible for the supervision duties of both roles: supervising up to about fifty employees. Aff. of See ¶ 24. See, Williams, and Cernanec all tried (successfully or unsuccessfully) to transfer out of these supervisor positions and cited difficulty either with management or Wright specifically as an important motivation for trying do so. Dep. of See 144–149; Dep. of Williams 23–25, 45, 142; Aff. of Cernanec ¶ 10.

While employed in her supervisory role, See's performance reviews were generally, but not entirely, positive. Performance Review Form B, Doc #: 22-5 (showing See received "fully meets" or "meets most" expectations in all categories during her forty-five and ninety day reviews.).

See's position was ultimately eliminated in March 2015. Aff. of See at ¶ 54.

A March 6, 2015, letter from CCF to See stated in part, "Cleveland Clinic has made the business decision to eliminate your position. This difficult decision was necessitated by the changing landscape of the health care industry and the need to operate more efficiently in the future. . . . Finally, the elimination of your position with the Cleveland Clinic will be considered an involuntary termination without misconduct. As such, Cleveland Clinic will not contest any application for Unemployment Insurance Benefits based on the elimination of your position." Notice of Termination 1, 3. See disputes the characterization of her termination as a mere

elimination of her position, and, on August 13, 2015, filed suit in Cuyahoga County Court of Common Pleas alleging nine causes of action arising from discrimination on the basis of race, age, and use of Family Medical Leave Act ("FMLA") time off. Doc #: 1. The matter was removed to federal court on September 15, 2015.

On August 31, 2016, Defendants CCF and Wright ("Defendants") filed the instant Motion for Summary Judgment, Doc #: 19. This Motion is fully briefed. *See* Resp., Doc #: 22; Reply, Doc #: 25. For the reasons discussed below, the Court grants the Motion for Summary Judgment. Defendants also filed a Motion to Strike several depositions, Doc #: 23, which the Court presently denies as moot.

**II. Legal Standard**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "On the other hand, if a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate." *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of showing that there is no material issue in dispute. *Id.* at 607 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A fact is deemed material only if it might affect the outcome of the lawsuit under the governing substantive law." *Id.* (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). In reviewing a motion for summary judgment, the court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving

party. *Id*. (citing *Kalamazoo Acquisitions, LLC v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005)).

**III. Discussion**

**A. Wrongful Discharge in Violation of Public Policy Claims**

In Counts V, VIII, and IX, See alleges violations of Ohio public policy. More specifically, in Count V, See alleges she "was wrongfully terminated in violation of public policy by being terminated due to her race, age and use of medical leave." Compl. ¶ 142. See further alleges that her termination was "retaliation, based on Plaintiff's seeking to challenge Defendant Wright's employee reviews." Compl. ¶ 149. In Count VIII, See alleges violations of Ohio public policy, as adopted from the FMLA, for discharge in response to her use of medical leave. Compl. ¶¶ 211, 215. In Count IX, See similarly alleges "it is unlawful for an employer to retaliate against an employee or in any manner discriminate against an employee for receiving medical treatment for serious and life-threatening medical conditions." Compl. ¶ 221.

> The elements of the tort of wrongful discharge in violation of public policy are,
>
> > (1) that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Leininger v. Pioneer Natl. Latex*, 875 N.E.2d 36, 39–40 (Ohio 2007). At issue here, first and foremost, is the second, "jeopardy" element. In order to prove the jeopardy element, a plaintiff must show that "without a common-law tort claim . . . Ohio's clear policy against age

-4-

discrimination would be compromised." *Id.* at 41. "[I]t is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Id.* at 43; *accord Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002) ("Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.").

See asserts public policy violations on the basis of race, age, and use of medical leave. None of these alleged violations, however, is cognizable as a public policy wrongful discharge tort. In *Wiles*, the Ohio Supreme Court held that allowing a wrongful discharge claim based on the public policy expressed in the FMLA was unnecessary to vindicate the policy goals of the FMLA. 773 N.E.2d at 528. In *Leininger*, the Ohio Supreme Court evaluated the age-discrimination remedies available under Ohio law and explicitly rejected a cause of action for wrongful discharge when it is based on age discrimination, concluding, "we hold that the jeopardy element necessary to support a common-law claim is not satisfied, because R.C. Chapter 4112 adequately protects the state's policy against age discrimination in employment through the remedies it offers . . . . We therefore hold that a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination." 875 N.E.2d at 44. Other courts have extended this reasoning to race discrimination claims. *E.g.,Wakefield v. Children's Hosp.*, No. C2-06-1034, 2008 WL 3833798, at *8, 2008 U.S. Dist. LEXIS 91835, at *26 (S.D. Ohio Aug. 13, 2008) (internal citations and

quotation marks omitted) ("The Ohio Supreme Court has construed § 4112.02 to allow for the full panoply of remedies, including compensatory and punitive damages. Thus, § 4112.02 provides broad relief which is sufficiently comprehensive to vindicate the policy goals set forth in that statute. The Court can detect no reason to suspect that the same remedial scheme is inadequate when applied to race discrimination claims."); *see Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 298–99, 304 (6th Cir. 2004) (affirming the dismissal of public policy claims because both Title VII and Ohio Rev.Code § 4112 provide adequate remedies to protect society's interests as to race and age discrimination).

Therefore, the Court holds that See's public policy tort claims fail as a matter of law because other adequate remedies exist (and, in fact, See has also raised her claims under those other statutory schema).[1]  Counts V, VIII, and IX are thus dismissed.

### B. FMLA Retaliation Claim

In Count IV, See alleges retaliation for her taking of FMLA leave. Compl. ¶¶ 141–165. Therein, See alleges that she "was entitled to take medical leave pursuant to the terms and conditions set forth in the FMLA for her own extended medical needs pursuant to her medical provider's recommendations." *Id.* at ¶ 115. Specifically, See alleges she "had a serious health condition" and "was incapacitated for a period of time due to her serious health condition and was unable to perform her duties during her incapacity." *Id.* at ¶¶ 120, 121. Ultimately, See alleges her "use of FMLA qualifying leave was a negative factor in Defendant Clinic's decision

---

[1] Because See's public policy claims fail as a matter of law, the Court need not discuss the factual failings of these claims. However, the Court notes (as discussed in more detail in subsequent sections) that See has failed to demonstrate facts showing that the termination of her employment was based on race, age, or of FMLA leave.

-6-

to terminate Plaintiff" and that CCF "terminated Plaintiff and otherwise discriminated against Plaintiff in violation of the FMLA." *Id.* at ¶¶ 131, 130.

"There are two theories of recovery under the FMLA: an interference (or entitlement) theory and a retaliation (or discrimination) theory." *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 691 (6th Cir. 2009). "The central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). In the Sixth Circuit, courts "appl[y] the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green* to retaliation claims under the FMLA." *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (internal citation omitted). Specifically,

> To establish a prima facie case of retaliation under the FMLA, [a plaintiff] must show that: (1) [s]he was engaged in a statutorily protected activity; (2) [the employer] knew that he was exercising his FMLA rights; (3) [s]he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity.

*Seeger*, 681 F.3d at 283 (internal citations omitted).

The facts most favorable to See related to her taking of leave do not support her allegations of FMLA-based retaliation. Between September 26, 2014, and October 8, 2014, See took off time for personal medical reasons. Dep. (pt. I) of See 203; Aff. of See ¶¶ 41–47. This time off, however, was not FMLA leave but rather a combination of paid time off and unpaid time off. Dep. (pt. I) of See 203–204; *see also* Notice of Termination 2 (defining "PTO" as "paid time off"), Doc #: 20-11. In fact, See acknowledges she never requested or took FMLA for her

own medical needs.  Dep. (pt. II) of See 250, Doc #: 20-2.  Because See did not seek or use FMLA leave for her personal medical needs, she has failed to provide evidence supporting the first, second, and fourth elements of a retaliation claim.

It is also undisputed that See did request and ultimately did take FMLA leave to care for her daughter.  Dep. (pt. II) of See 250; Notice of Eligibility, Doc #: 20-12.  However, See did not premise the retaliation claim in her Complaint on FMLA claims related to care for her daughter, but rather exclusively on FMLA related to her own medical needs.  Compl. ¶¶ 141–165.  Thus, any allegations related to FMLA leave related to See's daughter are not relevant to this claim.

Claim IV thus fails based on undisputed facts as a matter of law.

**C. Intentional Infliction of Emotional Distress Claim**

In Count VII, See alleges intentional infliction of emotional distress.

In Ohio, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 667 (Ohio 1983). *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007).  "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress."  *Phung v. Waste Mgt., Inc.*, 644 N.E.2d 286, 289 (Ohio 1994).

"Whether conduct is 'extreme and outrageous' is initially a question of law for the court."

*Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 714 (Ohio App. 2009). In defining "extreme and outrageous" conduct, the Supreme Court of Ohio has adopted the language of the Restatement (Second) of Torts:

> * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. *See* Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *

*Yeager*, 453 N.E.2d at 671–72 (quoting Restatement (Second) Torts § 46 cmt. d (1965)); *see also Tuleta v. Med. Mut. of Ohio*, 6 N.E.3d 106, 118 (Ohio App. 2014) (quoting *Brown v. Denny*, 594 N.E.2d 1008, 1012 (Ohio App. 1991)) ("Clearly, not every wrongful act is outrageous. Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct.").

In her opposition to the instant Motion for Summary Judgment, See sums up her intentional infliction of emotional distress claim: "evidence has been presented of Cheryl Wright

intentionally or at least recklessly causing emotional distress to Carla See through harassment, screaming, and throwing of boxes at Carla See's office door. Carla See has presented a genuine issue of fact as to the extreme and outrageous nature of Cheryl Wright's actions. Carla See has presented a genuine issue of fact that her seeking medical treatment for stress and taking leave from her job as a consequence was proximately caused by the actions of Cheryl Wright and the inaction of CCF to assist her in the performance of her job." Resp. 16.

In *Jones v. Wheelersburg Local Sch. Dist.*, an Ohio appellate court collected and summarized several cases describing how extreme outrageous conduct has been evaluated in similar circumstances. No. 12CA3513, 2013 WL 4647645, 2013 Ohio App. LEXIS 3807 (Ohio App. 2013). Two cases cited discussed therein are particularly informative:

> In *Shepard v. Griffin Services, Inc.*, 2nd Dist. No. 19032 (May 10, 2002), the court determined that the following conduct was not extreme and outrageous: (1) purposefully discriminating against the employee based on her sex by treating her less favorably than other similarly situated male employees and denying her the opportunity to upgrade her position and increase her pay level; (2) maliciously and recklessly defaming the employee's reputation and character by accusing her of fraud, falsification of records and deception, without properly ascertaining the truth of the accusations; (3) publishing private and confidential information about the employee; (4) retaliating against the employee for making complaints of discrimination; (5) terminating the employee's employment based upon false accusations and an incomplete investigation of events; and (6) breaching the contract with the employee. The court did not believe that any of the foregoing conduct would "caus[e] an average member of society to exclaim, 'Outrageous!' "
> In *Smith v. Lebanon City Schools*, 12th Dist. No. CA99–02–024 (Nov. 8, 1999), the court concluded that the following conduct failed to rise to the level of extreme and outrageous conduct: (1) the employer screamed and yelled at the employee; (2) the employer falsely accused the employee of causing problems in the treasurer's office and of stealing money; (3) the employer "repeatedly" berated the employee in front of other people; (4) the employer called the employee "moronic and uneducated"; and (5) the employer berated the employee for being a woman.

Jones, 2013 WL 4647645 at *9.

The facts and inferences taken in See's favor suggest that See had an unpleasant, difficult, and perhaps bad boss.  However, having a lousy boss, a too-common occurrence in modern society, is simply not a matter "beyond all possible bounds of decency . . . regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager*, 453 N.E.2d at 671.  Similar to the facts of *Smith* and *Shepard*, the harassment, screaming, and throwing of boxes at an office door, here, are insufficiently extreme and outrageous to form the basis of a claim for intentional infliction of emotional distress.

Claim VII thus also fails as a matter of law.

**D. Race and Age Discrimination Claims**

In Count I, See alleges racial discrimination, and in Counts II and III, See alleges age discrimination, all three in violation of subsections of Ohio Rev. Code § 4112.02 or § 4112.14 or both.[2]

"[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."  *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).  In the absence of direct evidence of discrimination, the starting point for an inquiry into discrimination is the *McDonnell Douglas Corp. v. Green*,

---

[2] The Court notes in passing that See cannot pursue age discrimination claims under both § 4112.02 and § 4112.14, as these statutes are mutually exclusive. Ohio Rev. Code Ann. § 4112.02(N) ("A person who files a civil action under this division is barred, with respect to the practices complained of, from instituting a civil action under section 4112.14 of the Revised Code."); Ohio Rev. Code Ann. § 4112.14(B) (including a similar provision). However, because the Court is dismissing both of See's age discrimination claims, the issue of mutual exclusivity is moot and the Court therefore need not presently address it.

411 U.S. 792 (1973), framework. A *McDonnell Douglas*-based frameworks apply to cases involving race discrimination, *Plumbers & Steamfitters*, 421 N.E.2d at 131, and to those involving age discrimination, *Coryell v. Bank One Trust Co. N.A.*, 803 N.E.2d 781, 784 (Ohio 2004). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Plumbers & Steamfitters*, 421 N.E.2d at 131–32. Next, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the action taken. *Id.* Finally, the burden shifts back to the plaintiff to prove that the defendant's stated reasons for the action were a pretext for discrimination. *Id.*

### 1. Prima Facie Case

See has failed to establish a prima facie claim of discrimination.

"[T]o establish a prima facie case of discrimination by the defendant, the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class . . . [or] that similarly situated non-protected employees were treated more favorably." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir.2002) (internal quotation marks omitted). However, "when a termination arises as part of a work force reduction, the fourth element of the *McDonell Douglas* test is modified to require the plaintiff to provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010) (internal quotation marks omitted).

Here, there is no dispute that See is African American and was at all relevant times forty

years or older.  There is no dispute that See's employment was terminated.  The parties also do not dispute that See was qualified for the position.  At issue here is only the fourth element. First, the Court must first evaluate whether this is a work force reduction.

> It is important to clarify what constitutes a true work force reduction case. A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).  There is no evidence that See was replaced, rather the evidence indicates her duties were absorbed by existing staff, specifically Wright.  Decl. of Olivo ¶ 10, Doc #: 20-5 ("After Carla See's Supervisor II position was eliminated in March 2015, Cheryl Wright absorbed the supervisory responsibility for the direct reports that had formerly reported to Carla See."); *see* Workforce Reduction Employee Log 1, Doc #: 20-15 ("The current structure for the Hematology/Oncology leadership is two supervisors, manager and administrator. . . . We are looking to eliminate the Supervisor II position to reduce the span of control.  There are approximately 24 employees reporting to the Supervisor II at this time.  Those employees would report directly to the Manager.)  Moreover, See does not dispute that this is a work force reduction case.  Resp. 10, 11–12.  Thus, "the fourth prong of the prima facie age discrimination showing is supplanted by a requirement that the plaintiff proffer additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons."  *Lopez v. Am. Family Ins. Co.*, 618 F. App'x 794, 802 (6th Cir. 2015) (internal quotation marks omitted).

See, however, has produced no "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." The Sixth Circuit has provided some guidance regarding such evidence:

> If the plaintiff was truly singled out for discharge because of age he or she should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case. For example, a plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff. Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive as in *Laugesen*, 510 F.2d at 313. The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.

*Barnes*, 896 F.2d at 1465. Here, there is no evidence that See was more qualified than younger or different race coworkers working in the same position. There is ample evidence that See's job was demanding, but the facts available include no evidence that See was singled out for termination based on age or race. There is ample evidence that See and her immediate supervisor, Wright, did not work well together— in fact, there is evidence that a number of employees had difficulty working with Wright. However, there is no evidence that Wright acted on the basis of race or age as opposed to merely being a generally difficult person to work with. Furthermore, there is no evidence that Wright was even part of the decision to eliminate See's position, and no evidence of racial or age-based statements or actions on the part of the decision-makers.

There is simply a dearth of evidence in support of any race- or age-based consideration in the decision to eliminate See's position.

## 2. Nondiscriminatory or Pretextual Reason

Assuming, *arguendo*, that See had made out a prima facie case of discrimination, the burden then shifts to Defendants to articulate some legitimate, nondiscriminatory reason for her termination. Here, Defendants offer evidence that it made the decision to "develop more cost-effective departmental operations" as "part of an annual budget review process." Decl. of Olivo ¶ 6. In deciding specifically which position to eliminate—Carla See's or Crystal Cernanec's—Defendants provides evidence that CCF considered "length of service, last performance evaluation rating, knowledge, skills, and training, value of institutional knowledge, and ability to perform a variety of tasks." *Id.* at ¶ 9; *see also* Outplacement, Severance Policy, Doc #: 20-14. Defendants offer evidence showing that Carla See did not score as well as Crystal Cernanec overall, in fact scoring lower in each metric. Decl. of Olivo ¶ 9; Workforce Reduction Log 3–5.

The final step, then, is for See to demonstrate that CCF's articulated reasons are pretext. "A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). See has done none of these things, and in fact See does not even argue pretext in her opposition. Resp.11–13. See does object to the validity of the most recent, inferior performance evaluation she received from Wright, *id.* at 12, but, even if See had "tied" Cernanec with a "Fully Meets Expectations" evaluation, See would still have a lower score based on the lower (and undisputed) ratings she received on the remaining criteria.

Thus, even had See made out a prima facie case, her claims for race and age

-15-

discrimination would be subject to summary judgment.

### E. Hostile Work Environment Claim

In Count VI, See alleges a hostile work environment caused by harassment "motivated by Wright's sexual discrimination, age discrimination, race discrimination and retaliation against Plaintiff due to Plaintiff's medical leave use." Compl. ¶ 177.

"To establish a hostile work environment claim under Title VII, plaintiffs must prove that: (1) they were members of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on plaintiffs' protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions." *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008). "In deciding whether actionable harassment exists, we consider the totality of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance." *Fullen v. City of Columbus*, 514 F. App'x 601, 607 (6th Cir. 2013). "[M]erely offensive' conduct does not establish a hostile work environment." *Id.* at 886. "Occasional offensive utterances do not rise to the level required to create a hostile work environment. To hold otherwise would risk changing Title VII into a code of workplace civility, a result we have previously rejected." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512–13 (6th Cir. 2011) (internal quotation marks and citations omitted).

See has failed to create a genuine dispute of material fact with regards to the first element. As discussed in the previous sections (and not repeated here), she has failed to show that the

unpleasant nature of the workplace environment was based any protected status. While the behavior exhibited by Wright may have been insulting or frustrating, absent from the record is any evidence indicating the conduct was based on See's age, race, or use of FMLA.

Thus, as with the other claims, Count VI also fails.

### IV. Motion to Strike

On October 13, 2016, after See had filed her opposition to the motion for Summary Judgment, Defendants filed a Motion to Strike three of the depositions upon which See relied.

Even if the objected-to depositions are considered, however, See cannot meet the burden to survive summary judgment. Thus, because the Court is granting the Motion for Summary Judgment even if the objected-to depositions are considered, the Motion to Strike those depositions is moot and the Court need not address it.

Accordingly, the Motion to Strike is denied as moot.

### V. Conclusion

For the reasons stated above, the Motion for Summary Judgment, Doc #: 19, is GRANTED and all claims against both Defendants are DISMISSED. Motion to Strike, Doc #: 23, is DENIED AS MOOT.

IT IS SO ORDERED.

*/s/ Dan A. Polster     Nov. 29, 2016*
**DAN AARON POLSTER**
**UNITED STATE DISTRICT JUDGE**